UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARINA BAUGH,

    Plaintiff,

v.                                                      Case No. 8:21-cv-125-TPB-CPT

RNMG, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before me on referral is the parties' *Joint Motion and Stipulation for Approval of Settlement and Dismissal with Prejudice*. (Doc. 30).[1] I conducted a hearing on the matter on August 10, 2021. For the reasons discussed below, I respectfully recommend that the parties' motion be granted in part and denied in part.

I.

Plaintiff Marina Baugh initiated this action in January 2021 against her former employer, Defendant RNMG, Inc., and its owner and/or principal, Defendant Ramzy Girgis, seeking to recover unpaid overtime wages under the Fair Labor Standards Act

---

[1] The parties filed an earlier motion that bore the same title and sought the same relief. (Doc. 23). Following a hearing on that motion, I instructed the parties to file a supplemental submission addressing a number of issues discussed at the hearing. (Doc. 29). The parties responded by filing the instant motion (Doc. 30), which effectively mooted their prior motion.

(FLSA), 29 U.S.C. §§ 201–219.  (Doc. 1).  Baugh alleged in her complaint that the Defendants employed her as a sandwich maker at their Subway franchise in Venice, Florida, and that despite "routinely work[ing]" fifty-five hours or more each week, she did not receive any compensation for her labor beyond the first forty hours.  *Id.* at 6.  For relief, Baugh sought both compensatory and liquidated damages, as well as attorney's fees and costs.  *Id.* at 7.

In March 2021, Baugh elaborated upon her allegations in response to the Court's standard interrogatories in FLSA actions.  (Docs. 12, 18).  Of relevance here, Baugh claimed that she was employed by the Defendants from August 2016 to May 2020; that she worked roughly sixty-five hours of overtime per week during that time frame, for a total of 3,900 overtime hours; and that her overtime rate was $21 per hour.  (Doc. 18).

In their answer, the Defendants denied Baugh's averments and raised several affirmative defenses, including that Baugh had already received the overtime wages to which she was entitled under the FLSA.  (Doc. 15).  Following Court-ordered mediation, the parties reached a stipulated resolution of the matter.  (Doc. 21).  Under the terms of their accord, the Defendants agreed to pay Baugh $5,000 in unpaid overtime wages and an equal sum in liquidated damages, for a total amount of $10,000.  (Doc. 30 at 6).  The Defendants also agreed to compensate Baugh's counsel $5,000 to cover his fees and costs.  *Id.*  For her part, Baugh acceded to releasing the Defendants from any liability under the FLSA.  (Doc. 30-1 at 4).

By way of their instant motion, the parties now ask that the Court approve their settlement agreement pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). (Doc. 30). With the benefit of the argument and representations made by the parties at the August 10 hearing, the matter is ripe for the Court's consideration.

II.

Congress enacted the FLSA to protect employees from the "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d at 1352. To further this purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704–05 (1945)).

In FLSA actions brought directly by current and former employees for unpaid wages, district courts must scrutinize the parties' settlement "'for fairness'" before dismissing an action. *Id.* at 1306–07 (quoting *Lynn's Food*, 679 F.2d at 1353). Specifically, courts must determine that the settlement is a "'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Sanchez v. M&F, LLC*, 2020 WL 4671144, at *3 (M.D. Fla. Aug. 12, 2020) (quoting *Lynn's Food*, 679 F.2d at 1355).

District courts are afforded discretion in deciding whether to approve FLSA settlements. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir.

2013) (per curiam) (citation omitted).[2]  If a court finds that such a settlement reflects a fair and reasonable compromise of the contested issues, it may approve the agreed-upon resolution "to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.

In rendering such a determination, courts within this district often consider the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of [the] plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel."  *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

By my consideration, factors one, two, three, and six weigh in favor of approving the parties' settlement agreement here.  The main issue presented implicates the fourth and fifth factors, which appear to have affected Baugh's decision to accept less remuneration than what she originally sought in response to the Court's interrogatories.  As noted above, Baugh initially asserted that she was entitled to recover wages for a total of 3,900 overtime hours at an overtime pay rate of $21 per hour.  (Doc. 18).  By contrast, the parties represent that Baugh's settlement figure of

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

4

$10,000 equates to 1,428.5 hours multiplied by an overtime premium of $7 per hour. (Doc. 30).

At the August 10 hearing, the parties offered several justifications for this reduced amount. They explained that Baugh filed her interrogatory responses before she received the Defendants' discovery, which—according to Baugh's counsel—demonstrated that Baugh would have significant difficulty marshalling the necessary evidence to establish the elements of her FLSA claim at trial. The parties also explained that Baugh faced a number of threshold legal issues as well, including demonstrating that she was a non-exempt employee under the FLSA, and that all—or at least some—of the overtime hours she claimed were not time barred.

Based upon these representations, as well as the other information before the Court, it is evident that there are contested factual and legal issues which prompted the parties to arrive at the compromised sum reflected in their settlement agreement. It is also apparent that, given the expense and uncertainty of further litigation, the parties—with the benefit of their lawyers' advice—have decided that it is in their respective best interests to bring this case to closure based upon terms they find to be fair and reasonable. The parties' counseled decision to resolve Baugh's claims in this manner, particularly when coupled with the attestations made at the August 10 hearing, provides an adequate basis for approving their accord. *Dees*, 706 F. Supp. 2d at 1241 (finding that an FLSA settlement "'will, almost by definition, be reasonable'" where, as here, "'the parties are represented by competent counsel in an adversary context'") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla.

2009)).  Accordingly, I find that the parties' agreed-upon resolution of Baugh's FLSA claim for the total sum of $10,000 is fair and reasonable.

That the parties' revised settlement agreement includes a release provision does not alter this assessment.  (Doc. 30-1 at 4).  By my reading, this rider is not the type of general or extensive release that courts have found to be anathema to the FLSA. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–52 (M.D. Fla. 2010).  Such releases are frequently viewed as "'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee."  *Id.* at 1351 (quoting *Dees*, 706 F. Supp. 2d at 1238–42).  Because general releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer," they often do not survive judicial scrutiny.  *Id.* at 1352.

The parties' narrowly tailored release here does not implicate such concerns. Unlike the "pervasive and unbounded release" at issue in *Moreno*, which called for the plaintiff to surrender "a dizzying array of claims, known and unknown, against the defendant," *id*. at 1350, 1353, Baugh only absolves the Defendants from liability under the FLSA (Doc. 30-1 at 4).  As such, the release clause does not undermine the fairness or reasonableness of the parties' agreed-upon resolution.  *See, e.g.*, *Dumas v. 1 Able Realty, LLC*, 2018 WL 1791534, at *3 (M.D. Fla. Apr. 12, 2018) (approving an FLSA release that did not require the plaintiff to release all claims, but only those related to the plaintiff's employment with the defendant that were averred in the complaint), *report and recommendation adopted*, 2018 WL 1791535 (M.D. Fla. Apr. 16,

2018); *Cooper v. Garda CL Se., Inc.*, 2015 WL 9244682, at *1 (M.D. Fla. Dec. 18, 2015) (finding a release to be reasonable where it was limited "to federal and state law wage and overtime claims existing at the time of the settlement").

There is one remaining proviso in the parties' settlement agreement—found in section III.B—that merits discussion. This clause requires Baugh to go beyond releasing the Defendants from any liability under the FLSA and necessitates that she also "confirm[ ] she is not aware of any *other* claims against the Defendants." (Doc. 30-1 at 5) (emphasis added). At the August 10 hearing, I questioned defense counsel as to whether this covenant ran afoul of the teachings of *Moreno* and its progeny. *See Ashworth v. Glades Cty. Bd. of Cty. Comm'rs*, 379 F. Supp. 3d 1244, 1249 (M.D. Fla. 2019) (explaining that "an employer [cannot] use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA") (internal quotation marks and citations omitted). As a result of my inquiry, defense counsel agreed to allow the Court to strike this language from the parties' agreement.

As for the remaining issue of attorney's fees and costs, the FLSA requires the Court to review the reasonableness of the proposed fee figure to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). Here, the parties state that the stipulated sum of $5,000 to be paid to Baugh's counsel was negotiated separately from Baugh's recovery and without regard to the settlement amount for her overtime claim.

7

(Doc. 30 at 6). The parties also state that this figure is less than what Baugh's counsel could have sought under the lodestar method. *Id.* at 7–8. These representations are sufficient. *See Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding that attorney's fees in an FLSA settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar figure); *Bonetti*, 715 F. Supp. 2d at 1228 (providing that reasonableness may be demonstrated by representing that the parties agreed to the plaintiff's attorney's fees separately and without regard to the sum paid to settle the plaintiff's FLSA claim).

### III.

For the reasons set forth above, I respectfully recommend that the Court:

1. Deny as moot the parties' first *Joint Motion and Stipulation for Approval of Settlement and Dismissal with Prejudice* (Doc. 23);

2. Grant in part and deny in part the parties' second *Joint Motion and Stipulation for Approval of Settlement and Dismissal with Prejudice* (Doc. 30), as outlined herein;

3. Approve the parties' settlement agreement (Doc. 30-1) with the exception of section III.B, which obligates Baugh to "confirm[ ] she is not aware of any other claims against the Defendants;"

4. Dismiss this action with prejudice; and

5. Direct the Clerk of Court to terminate any pending motions and deadlines and to close the case.

Respectfully submitted this 26th day of August 2021.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections or move for an extension of time to do so waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record